# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 16-1289V
Filed: May 10, 2018

| | |
|---|---|
| * * * * * * * * * * * * * * | |
| NICOLE MACKEY, | * |
| | *   PUBLISHED |
| Petitioner, | * |
| v. | *   Special Master Oler |
| | * |
| SECRETARY OF HEALTH | *   Decision on Attorneys' Fees and Costs. |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| * * * * * * * * * * * * * * | |

*Bradley S. Freedberg,* Brad Freedberg Attorney at Law, Denver, CO, for Petitioner.
*Claudia Barnes Gangi,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 6, 2016, Petitioner, (Nicole Mackey), filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program"),[2] alleging that she suffered Parsonage Turner Syndrome, "shoulder injury related to flu vaccine, bursitis, brachial plexopathy, neuromuscular symptoms, tendonitis, brachial neuritis and neuropathy," as a result of receiving an influenza ("flu") vaccine on October 7, 2013. ECF No. 1 at ¶¶ 4, 18. The parties filed a joint stipulation on August 1, 2017, representing that they had reached a settlement and that a decision should be entered awarding compensation in this case. ECF No. 19 at 2, ¶7. The special master previously assigned to this case issued a Decision on August 2, 2017, adopting the parties' stipulation and awarding compensation. ECF No. 20.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986 ("Vaccine Act" or "Vaccine Program"), Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Petitioner now seeks an award of attorneys' fees and costs, requesting $27,195.75 in attorneys' fees and $500 in costs for a total of $27,695.75.[3]  After careful consideration, I grant the request in substantial part, but deny in part, awarding a total of $19,002.67, for the reasons set forth below.

I.   **Relevant Procedural History Regarding Attorneys' Fees and Costs**

On August 21, 2017, Petitioner filed a motion for attorneys' fees and costs (AFC Motion), requesting $31,995.00 in attorneys' fees for counsel Bradley S. Freedberg and Greg Cairns, and $500.00 in costs, for a total of $32,495.00.  Petitioner's ("Petr's") Application ("App.") dated August 21, 2017, ECF No. 22 at 2.[4]  Attached to her AFC Motion, Petitioner submitted a document labeled "Exhibit A" (*see* ECF No. 22-1 ("Ex. A")), comprised of: (1) an affidavit of Attorney Bradley S. Freedberg (*id*. at 1-3); (2) an October 2015 retainer agreement between Petitioner and her attorneys (*id*. at 4); (3) handwritten billing entries that Mr. Freedberg represents reflect his hours billed by him (*id*. at 5-6); and (4) billing entries reflecting the hours billed by Mr. Cairns (*id*. at 7-8).

Respondent filed a response to Petitioner's AFC motion on August 23, 2017.  Respondent's Response, dated August 23, 2017, ECF No. 23.  Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs."  *Id*. at 1.  Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  *Id*. at 2.  Additionally, he "respectfully recommends that [I] exercise [my] discretion and determine a reasonable award for attorneys' fees and costs."  *Id*. at 3.

This case was transferred to my docket on December 5, 2017.  ECF No. 29.  I issued a detailed order on February 12, 2018, highlighting several deficiencies with Petitioner's AFC motion, and ordering Petitioner to rectify those inadequacies.  *See* Order To Supplement Petitioner's Motion For Attorneys' Fees And Costs, ECF No. 31.  In my order of February 12, 2018, I highlighted (1) that Petitioner's AFC Motion lacked an updated signed statement indicating that Ms. Mackey did not incur any out-of-pocket expenses throughout the pendency of

---

[3] As explained *infra*, Petitioner originally requested $31,995.00 in attorneys' fees and $500.00 in costs, for a total of $32,495.00.  *See* ECF No. 22 at 2.  On February 20, 2018, however, Petitioner reduced her fees request, now seeking $27,195.75 in attorneys' fees and $500 in costs, for a total of $27,695.75.  *See* ECF No. 32.

[4] Petitioner filed her application for attorneys' fees and costs without proper pagination.  *See generally* Petr's App.  Thus, for ease of reference, I will use the page numbers generated from the CM/ECF filing reflected at the top of the page.  Therefore, the page entitled "Application For Award Of Attorneys Fees To Counsel For Petitioner" will be cited as "Petr's App. at 1" with subsequent pages numbered accordingly.

this case, as required by the Vaccine Program's *Guidelines for Practice*[5] and *General Order #9*[6] (*see* ECF No. 31 at 2); (2) that the requested hourly rates in the AFC Motion for the work performed by Messrs. Freedberg and Cairns, were "well-above the respective accepted ranges of rates for attorneys with comparable experience in the Vaccine Program" (*id.* at 3)[7]; and (3) that my review of the billing entries attached to the AFC Motion revealed that several of the hours billed by Mr. Freedberg and Mr. Cairns at their requested attorney rates were more appropriately classified as either paralegal time or clerical tasks (*id.* at 4).[8]  I thus requested that Petitioner file supporting documentation to correct those deficiencies, and to submit a memorandum of law citing the proper legal authority to justify the hourly rates requested in her AFC Motion for her attorneys. *Id.* at 4.

On February 20, 2018, Petitioner filed a statement in compliance with General Order # 9 (*see* ECF No. 33), and a document entitled "Supplement To Attorney's [*sic*] Fee Application For Petitioner" (*see* ECF No. 32, hereafter "AFC Supplement"),[9] partly responding to the issues I raised in my order of February 12, 2018.  Petitioner's AFC Supplement stated that "this was and is the very first Vaccine matter handled by [Mr. Freedberg]" and that "there is a learning curve

---

[5] *Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines for Practice*") at 69 (revised April 21, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (last visited on Apr. 30, 2018) (Section X, Chapter 3, Part B(3)).

[6] *See General Order #9* found at https://www.uscfc.uscourts.gov/sites/default/files/General%20Order%20No.%209.pdf (last visited on Apr. 30, 2018).

[7] In articulating my reasons for why I deemed the hourly rates requested in this case to be much higher than those generally granted for attorneys of comparable experience in the Vaccine Program, I cited to the 2015-2016 and 2017 Fees Schedules posted on this Court's website -- *i.e.*, fees schedules which, as explained *infra*, provide a framework for how special masters generally determine reasonable "in forum" hourly rates in the Vaccine Program.  *See* ECF No. 31 at 3, n. 5, 7.

[8] In my order of February 12, 2018, I cited to several reflective examples of non-attorney work billed at an attorney's hourly rate by Mr. Freedberg and by Mr. Cairns.  *See* ECF No. 31 at 3, n. 9 (citing Mr. Freedberg's handwritten billing entries reflecting time billed at an attorney rate for tasks such as "[r]eview[ing] Bate Stamp Assembly" and to "calendar" various deadlines outlined in Scheduling Orders issued by this Court (*see* Ex. A at 5); also citing Mr. Cairns' billing entries reflecting time billed for assembling medical records (*see* Ex. A at 7).

[9] Petitioner filed her AFC Supplement without proper pagination.  *See generally* AFC Supplement.  Thus, for ease of reference, I will use the page numbers generated from the CM/ECF filing reflected at the top of the page.  Therefore, the page entitled "Supplement To Attorney's Fee Application For Petitioner" will be cited as "AFC Supplement at 1" with subsequent pages numbered accordingly.

3

necessarily associated with the prosecution of this matter." *Id*. at 1.  With regard to the hourly rate, the AFC Supplement stated:

> If indeed the hourly rate is excessive as claimed by [my order of February 12, 2018] for [Mr. Freedberg] and associate counsel Cairns then so be it, neither [attorneys] take any issue at the adjustment of rates to what is reasonable and appropriate under the circumstances.  Both [counsel] simply wish to get paid for the successful prosecution of the claim which remained open for months and months and for which neither have yet been paid a dime.

AFC Supplement at 1.  Additionally, Petitioner's AFC Supplement stated that both of her counsel in this case had "adjusted their time" to reflect the cutting of "ministerial tasks," and that the administrative task of Bate stamping of medical records was accomplished while conducting review of those records.  *Id*. at 2.

Petitioner's AFC Supplement did not include a memorandum of law citing the proper legal authority justifying Petitioner's attorneys' hourly rates requested in this case.  *See* AFC Supplement at 2.  Instead, Petitioner (1) argued that her attorneys' requested rates "are not obtusely divergent from the reasonable hourly fees cited and recognized by the special master [in my order of February 12, 2018]" (*id*.), and (2) reduced her overall fees request by fifteen percent -- "for expediency sake" -- now requesting $27,195.75 in attorneys' fees, and $500 in costs for a revised requested total of $27,695.75 (*id*.).

On March 6, 2018, Respondent's counsel, with Petitioner's counsel copied on the communication, emailed a member of my staff informing me that Respondent would not be filing a response to Petitioner's AFC Supplement.  Thus, this matter is now ripe for decision.

## II.     Applicable Law and Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1).  If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic.  *Id.*; *see also Sebelius v. Cloer*, 569 U.S. 369, 373 (2013).  Thus, as a successful Vaccine Act petitioner, Ms. Mackey is entitled to a fees and costs award.

### A. *Reasonable Hourly Rates and Time Expended*

#### i. *Requested Hourly Rates*

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Under this approach, "[t]he initial estimate of a reasonable attorney's fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  That product is then adjusted upward or downward based on other specific findings.  *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by Respondent, and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F.3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

In this case, the entirety of the counsel of record's work was performed in Denver, Colorado. *See* Petr's App. at 2; *see also* Ex. A at 5-6. A previous special master has awarded forum rates to legal professionals practicing in the Greater Denver, Colorado area. *See Miranda v. Sec'y of Health & Human Servs.*, No. 10-776V, 2016 WL 3092239 (Fed. Cl. Spec. Mstr. May 5, 2016).[10] I am persuaded that it is appropriate to award forum rates for attorneys practicing in Denver; thus, forum rates apply in this case.

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[11]

---

[10] In *Miranda*, the special master granted forum rates to Petitioner's counsel located in Greenwood Village, Colorado -- a city that is part of the Denver-Aurora-Lakewood, Colorado Metropolitan Division. *See* 2016 WL 3092239; *see also May 2017 Metropolitan and Nonmetropolitan Area Definitions*, Bureau of Labor Statistics (last visited on Apr. 27, 2018), https://www.bls.gov/oes/current/msa_def.htm.

[11] The fee schedules are posted on this Court's website. *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf (last visited on Apr. 27, 2018); *see also Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf (last visited on Apr. 27, 2018).

### a. *Hourly rates for Mr. Freedberg*

Petitioner's AFC motion states that Mr. Freedberg has more than twenty-eight years of experience practicing law. Petr's App. at 1. The handwritten billing entries submitted in this case by Mr. Freedberg reflect that he performed work on this case from September 2016 through August 2017.[12] *See* Ex. A at 5-6.

Accordingly, the 2015-2016 Hourly Rate Fee Schedule sets forth an attorneys' fees range of $350-$415 per hour for an attorney of Mr. Freedberg's experience (between 20-30 years of experience in practice).[13] Similarly, the 2017 Hourly Rate Fee Schedule sets forth an attorneys' fees range of $358-$424 per hour for an attorney of Mr. Freedberg's experience.[14]

As Petitioner's AFC Supplement points out above, this instant matter was the first Vaccine Act case brought by Mr. Freedberg, and thus I find that the lower end of the *McCulloch* fees range is an appropriate hourly rate. *See Srour v. Sec'y of Health & Human Servs.*, No. 14-283V, 2017 WL 2537373, at *4 (Fed. Cl. Spec. Mstr. May 17, 2017) (awarding hourly rate based in part on "specific experience with the Vaccine Program"); *Dipietro v. Sec'y of Health & Human Servs.*, No. 15-742V, 2016 WL 7384131, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016)

---

[12] I note that when examined in conjunction with the "Demand For Relief" articulated in Petitioner's initial petition filed on October 6, 2016 (*see* ECF No. 1 at ¶ 20), the intrinsic nature of the handwritten billing entries -- *i.e.*, billing entries that do not appear on an official law firm letterhead and in which Mr. Freedberg block bills time in half-hour increments -- makes it difficult for me to discern whether those entries are contemporaneously-recorded entries reflecting the work performed by Mr. Freedberg in this case (*see* Ex. A at 5-6). Specifically, in her petition filed on October 6, 2016, Petitioner made the following "Demand For Relief" for her attorneys in this case:

> In addition, Petitioner hereby requests the award of attorneys fees in the amount of $35,000 as a flat fee incurred by her *based on an approximation of incurred attorneys fee time* of from 55-80 hours of time related to the research, investigation and presentation of her claims, plus costs of suit, and such other and further relief that she may be entitled to.

ECF No. 1 at ¶ 20, emphasis added. The above statement -- in which Petitioner *projected* as of the date of the filing of her petition that her attorneys would be billing between 55-80 hours in this case -- raises a question as to the contemporaneous nature of Mr. Freedberg's billing entries. Nonetheless, I accept Petitioner's representations in her AFC Motion stating that Mr. Freedberg's handwritten billing entries do reflect "contemporaneous time entries." Petr's App. at 1.

[13] *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, *supra* at n.11.

[14] *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, *supra* at n.11.

6

(considering level of experience in the Vaccine Program in determining appropriate hourly rate). Thus, I find that Mr. Freedberg is entitled to an hourly rate of $350.00 for work performed in 2016, and an hourly rate of $358.00 for work performed in 2017.

### b. *Hourly rates for Mr. Cairns*

Petitioner's AFC motion states that Mr. Cairns has more than thirty years of experience practicing law (*see* Petr's App. at 1-2), and the billing entries submitted by Mr. Cairns reflect him performing work on this case from August 2016 through January 2017 (*see* Ex. A at 7-8).

As I noted in my order of February 12, 2018, Mr. Cairns would normally be entitled to hourly rates in accordance with his experience, as listed in the 2015-2016 and 2017 Hourly Rate Fee Schedules posted on this Court's website. *See* ECF No. 31 at 3, n. 7 (citing *OSM Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016 and 2017*). It has come to my attention since my order of February 12, 2018, however, that Mr. Cairns is *not* admitted to practice in the Court of Federal Claims.[15] In order to be eligible to practice in the Vaccine Program, an attorney *must* be admitted to practice in the Court of Federal Claims. *See* Vaccine Rule 14(a)(1).[16] Specifically, Vaccine Rule 14(a)(1) states as follows:

> An attorney is eligible to practice before the Office of Special Masters if the attorney is a member of the bar of the United States Court of Federal Claims under RCFC 83.1 and complies with the Vaccine Rules.

Vaccine Rule 14(a)(1). Moreover, the Vaccine Rules make clear that there can be only one attorney of record at any point in a case, stating as follows:

> A party may have only one attorney of record in a case at any one time and, with the exception of a pro se litigant appearing under Vaccine Rule 14(a)(1), must be represented by an attorney (not a firm) admitted to practice before the Court of Federal Claims. Any attorney assisting the attorney of record must be designated "of counsel."

Vaccine Rule 14(b)(1).[17] An attorney who is not eligible to practice in the Vaccine Program cannot recover attorneys' fees in certain circumstances. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *4 (Fed. Cl. Spec. Mstr. May 31, 2013). Furthermore, an attorney who is not admitted to practice before this Court is also not eligible to

---

[15] The Clerk's Office of the Court of Federal Claims confirmed that Mr. Cairns is not admitted to this Court's Bar.

[16] *Vaccine Rules, Appendix B, Rules Of The United States Court of Federal Claims* ("Vaccine Rules") at 125 (as amended through August 1, 2017) found at https://www.uscfc.uscourts.gov/sites/default/files/170801VaccineRules.pdf (last visited on Apr. 30, 2018).

[17] *See Vaccine Rules* at 125, *supra* at n.16.

serve "of counsel" and collect fees at an attorneys' rate for his work. *Id.*

As an initial matter, I note that it was unreasonable for Petitioner's counsel of record, Mr. Freedberg, to have Mr. Cairns as an "associated counsel"[18] in this case, without ensuring that he was also admitted to this Court's Bar.[19]  In doing so, Mr. Freedberg operated outside the Vaccine Rules and the Court of Federal Claims Rules.[20]  Mr. Cairns continued to bill time at an attorney's hourly rate for the work performed by him starting in August 2016 until January 2017, despite knowing that he was not admitted to practice in this Court.  In a prior case in which a petitioner requested fees for work performed by two attorneys with a co-counsel arrangement -- and where one co-counsel was admitted to this Court's Bar, while the second co-counsel was not admitted to this Court's Bar throughout the pendency of the Vaccine Act case -- the presiding special master refused to award the *majority of the non-admitted counsel's fees*. *See Avila v. Sec'y of Health & Human Servs.*, No. 14-605V, 2016 WL 6995372, at *3 (Fed. Cl. Spec. Mstr. Nov. 4,

---

[18] Petitioner's AFC Motion refers to Mr. Cairns as an "associated counsel" to Mr. Freedberg in this case.  Petr's App. at 1.

[19] This is especially so in light of my examining the retainer agreement submitted with Petitioner's AFC Motion (*see* Ex. A at 4), which reflects that Petitioner signed a retainer agreement with Mr. Freedberg's law firm agreeing to have "associated counsel," Mr. Cairns, assist Mr. Freedberg in this case as of *October 6, 2015* (*id.*).  If the date reflected on Petitioner's signed retainer agreement is in fact accurate -- *i.e.*, October 6, 2015 (*id.*) -- then Mr. Cairns, and by association Mr. Freedberg, under whose law firm letterhead Petitioner signed her retainer agreement, had an *entire year prior to the filing of this petition* on October 6, 2016 (*see* ECF No. 1), to have Mr. Cairns admitted to this Court's Bar.

It is also possible that the signed retainer agreement reflects a typographical error made by Ms. Mackey, in which she dated the retainer agreement for October 6, 2015, but instead intended to date the agreement for October 6, 2016. *Compare* Ex. A at 4 (reflecting Ms. Mackey's signature on the retainer agreement dated as of October 6, 2015), with ECF No. 1 (reflecting that the petition was filed in this case on October 6, 2016).  I note, however, that my order of February 12, 2018, provided Petitioner forty-five days to further supplement the record of this case.  Instead, Petitioner filed a response in which she simply reduced her attorneys' fees request by fifteen percent.  *See* AFC Supplement at 2, filed on February 20, 2018.  Thus, without additional documentation, it is unclear from the existing record if the date reflected on the signed retainer agreement was in fact a typographical error.

Assuming, *arguendo*, that the date reflected in the retainer agreement was a typographical error, this fact does not change my analysis.  I still find that Mr. Freedberg and Mr. Cairns should have ensured that Mr. Cairns was officially admitted to this Court's Bar.

[20] *Rules Of The United States Court of Federal Claims* ("Court of Federal Claims Rules") at 98 (as amended through August 1, 2017) found at
https://www.uscfc.uscourts.gov/sites/default/files/17.08.01%20FINAL%20Version%20of%20Rules_1.pdf (last visited on Apr. 30, 2018).

2016) (special master denying fees to the co-counsel who was not admitted to this Court's Bar, starting from the date his admitted co-counsel officially began to represent petitioner for her Vaccine Act petition). Moreover, when special masters *have* awarded fees to attorneys not admitted to this Court's Bar, and/or who did not appear in the matter formally, they have done so in the context of attorneys who *refer* cases to practitioners in the Vaccine Program, and whose work *predated the filing* of the petitioner's Vaccine Act petition. *See, e.g., Barrett v. Sec'y of Health & Human Servs.*, No. 09–389, 2014 WL 2505689 (Fed. Cl. Spec. Mstr. May 13, 2014) (only awarding fees to an attorney whose work on petitioner's claim predated the filing of the petition);[21] *Avila*, 2016 WL 6995372, *supra*.

Having considered the overall circumstances of this case, however, where Petitioner was awarded compensation for her Vaccine Act petition, and the fact that this was the first case in the Vaccine Program for her counsel of record, Mr. Freedberg, and "associated counsel," Mr. Cairns, I will award some fees for the work performed by Mr. Cairns. The work performed by Mr. Cairns will *not* be compensated at the applicable rate for an attorney of his experience, however; rather, I find Mr. Cairns' work in this case to be a supportive role to Mr. Freedberg's primary prosecution of this case. My finding that Mr. Cairns' involvement in this case is more akin to that of a supportive, paralegal role is further strengthened by my close examination of Mr. Cairns' billing invoices prior to the filing of Petitioner's Vaccine Act case on October 6, 2016, reflecting numerous billing entries in which he performs *non-attorney level work* that is generally performed by a paralegal. *See, e.g.*, Ex. A at 7, billing entry of 8/28/2016 ("[a]ssemble medical records for complaint"); *Id.*, billing entry of 9/8/2016 ("[r]eview and revise exhibit packet for complaint"); *Id.*, billing entry of 9/9/2016 ("[r]eview and revise exhibit packet for complaint"); *Id.* at 7-8, billing entry of 9/19/2016 ("[r]eview and update medical record set for complaint"); *Id.* at 8, billing entry of 9/28/2016 ("[a]ssemble additional medical records for complaint and Bate stamp all pages"). These billing entries further highlight Mr. Cairns' ancillary role in the prosecution of this claim when examined in conjunction with Mr. Freedberg's billing entries -- entries that reflect Mr. Freedberg billing for duplicative work already performed by Mr. Cairns, such as reviewing Petitioner's medical records and reviewing "Bate Stamp Assembly" of medical records. *See* Ex. A at 5.

Accordingly, I find it appropriate to use the hourly range applicable for *non-attorney-level* work, as listed in the 2015-2016 and 2017 Hourly Rate Fee Schedules -- *i.e.*, $125-$145 for

---

[21] I note that Mr. Cairns billed time in this case starting on August 28, 2016 through January 31, 2017 (*see* Ex. A at 7-8), while Petitioner's Vaccine Act case was filed on October 6, 2016, with Mr. Freedberg as the counsel of record (*see* ECF No. 1). The submitted retainer agreement (*see* Ex. A at 4), however, reflects that Mr. Freedberg, as primary counsel, and Mr. Cairns, as an "associated counsel," formally entered into an attorney-client relationship with Ms. Mackey in this case as of October 6, 2015 (*id.*). Thus, Mr. Cairns' role in this case *cannot* be deemed to be that of an attorney who *referred* this case to Mr. Freedberg, as in *Barrett*. Nonetheless, as noted *infra*, I deem the work performed by Mr. Cairns throughout the pendency of this case, especially for the time period from August 28, 2016 through October 6, 2016, to be more akin to non-attorney, paralegal work.

2016,[22] and $128-148 for 2017.[23] *Cf. O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (explaining that attorney compensation for non-attorney-level work must be comparable to what would be paid for a paralegal or secretary).  Thus, I will award Mr. Cairns' fees at a rate of $145.00 per hour for work performed in 2016, and $148.00 per hour for work performed in 2017.

### *ii.    Hours Reasonably Expended*

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).  Clerical and secretarial tasks should not be billed at all, regardless of who performs them.  *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.  And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).

Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522.  In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged.  *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the special master's reduction of attorney and paralegal hours); *see also Guy v. Sec'y of Health & Human Servs*., 38 Fed. Cl. 403, 406 (1997).

As pointed out in my order of February 12, 2018, Petitioner's AFC motion reflects that several of the hours billed by Mr. Freedberg and Mr. Cairns at their attorney rates are more appropriately classified as either paralegal time, or as clerical tasks.[24]  *See* ECF No. 31.  In response, Petitioner's AFC Supplement attempts to justify some of her counsels' billing entries in this case, by stating, in relevant part, as follows:

---

[22] *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, *supra* at n.11.

[23] *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, *supra* at n.11.

[24] In my order of February 12, 2018, I pointed out a few of Mr. Freedberg's billing entries reflecting time billed at an attorney rate for paralegal tasks such as "[r]eview[ing] Bate Stamp Assembly," and non-compensable tasks such as calendaring various deadlines outlined in scheduling orders issued by this Court.  *See* ECF No. 31 at 4, n.9 (citing Ex. A at 5).

> [B]oth counsel as solo practitioners had indeed adjusted their time […] as previously submitted to reflect ministerial tasks but also remind the court that in connection with the first matter there was review, records were not just bate stamped they were reviewed as they were assembled.

AFC Supplement at 2. Petitioner does provide a reasonable explanation as to why her fees request -- reflecting time billed for a task such as reviewing "Bate Stamp Assembly" -- should not be considered an administrative task, and thus time billed for that task will *not* be cut. Apart from that specific task, however, Petitioner's AFC Supplement does *not* provide a proper explanation for why *other administrative tasks* that are reflected in her attorneys' time sheets should not be reduced. In this regard, I note that a majority of Mr. Freedberg's billing entries constitute block billing, wherein counsel billed for multiple tasks in a single entry. Some of the blocks contain time that is not compensable, along with time that is compensable. For such entries, it is impossible to determine the precise portion of the time billed that should be compensated.[25]

Because it is counsel's burden to document the fees claimed, I will reduce the total award of attorneys' fees, with the hourly rate modifications discussed above,[26] by 5%. *See Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 29, 2009), at *8. *See also Broekelschen v. Sec'y of Health & Human Servs.*, 2008 U.S. Claims

---

[25] *See*, *e.g.*, Ex. A at 5, entry of 10/7/2016 (reflecting Mr. Freedberg block billing for compensable tasks, with a non-compensable task of "filing" documents); *Id.*, entry of 10/8/2016 (reflecting Mr. Freedberg block billing for compensable tasks such as reviewing Court orders and research, with non-compensable tasks such as cataloguing order and calendaring dates); *Id.*, entry of 10/11/2016 (reflecting Mr. Freedberg block billing for compensable tasks such as reviewing orders and pleadings, with a non-compensable task of calendaring dates); *Id.*, entry of 10/17/2016 (reflecting Mr. Freedberg block billing for a compensable task such as reviewing a scheduling order, with a non-compensable task of calendaring dates).

[26] Mr. Freedberg billed a total of 47 hours, while Mr. Cairns billed a total of 19.4 hours in this case. *See* App. at 1. Out of the 47 hours billed by Mr. Freedberg, 20.5 hours were billed in 2016, while 26.5 hours were billed in 2017. *See* Ex. A at 5-6. Out of the 19.4 hours billed by Mr. Cairns, 18.9 hours were billed in 2016, while 0.5 hours were billed in 2017. *See* Ex. A at 7-8.

Applying the hourly rates determined above leads to the following calculations:

| | | |
|---|---|---|
| $350 per hour for work performed by Mr. Freedberg in 2016 x 20.5 hours | = | $7,175.00 |
| + $358 per hour for work performed by Mr. Freedberg in 2017 x 26.5 hours | = | $9,487.00 |
| + $145 per hour for work performed by Mr. Cairns in 2016 x 18.9 hours | = | $2,740.50 |
| + $148 per hour for work performed by Mr. Cairns in 2017 x 0.5 hours | = | $74.00 |
| **Total attorneys' fees** | = | **$19,476.50** |

LEXIS 399, at **13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block billing). Indeed, the Vaccine Program's *Guidelines for Practice* state as follows: "[e]ach task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request."[27]

Accordingly, Petitioner is awarded $18,502.67[28] in attorneys' fees.

### B. Reasonable Costs

Petitioner requests a total of $500.00 in attorneys' costs. *See* App. at 1. The requested costs consist of filing fees, and service and copying costs associated with prosecuting this claim. *Id*. I find those costs to be reasonable and will grant them in full.

### III.   Total Award Summary

Based on the foregoing, I award a total of **$19,002.67**,[29] representing reimbursement for attorneys' fees in the amount of $18,502.67 and costs in the amount of $500.00, in the form of a check made payable jointly to Petitioner and Petitioner's counsel, Bradley S. Freedberg, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[30]

**IT IS SO ORDERED.**

/s/ Katherine E. Oler
Katherine E. Oler
Special Master

---

[27] *Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines for Practice*") at 68 (revised April 21, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (last visited on Apr. 27, 2018) (Section X, Chapter 3, Part B(1)(b)).

[28] Reducing the total attorneys' fees by 5% results in the following calculation:

$19,476.50 - ($19,476.50 x .05 = $973.83) = **$18,502.67**.

[29] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[30] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.